UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHAEL WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17CV138-PPS/MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Michael Wilson, a prisoner without a lawyer, filed an amended habeas corpus petition challenging a disciplinary hearing in which a Disciplinary Hearing Officer found him guilty of violating a state law, which in turn is a violation of Indiana Department of Correction policy A-100. ECF 6 at 1. As a result, Wilson was docked 360 days of earned credit time and was demoted in credit class to boot. *Id.*

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985). This means that, in the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted). This is an exceedingly low standard. Here's how the Seventh Circuit describes it:

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

In this case, Wilson was found guilty of violating a state law for dealing in a synthetic drug in contravention of IDOC policy A-100, which prohibits inmates from violating any state law. *See* Indiana Department of Correction, Adult Disciplinary Process: Appendix I. *See* http://www.in.gov/idoc/files/02-04-101_

2

APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The particular state law violation that Wilson allegedly committed involved dealing in more than five grams of synthetic marijuana in violation of Indiana Code 35-48-4-10.5(e)(1)(B), a level 6 felony.

In the Conduct Report, Investigator Prulhiere charged Wilson as follows:

> On November 20, 2016, as a result of this investigation, I, Investigator P. Prulhiere, have found sufficient evidence to charge Offender Michael Wilson 990969 with the violation of State Law IC 35-48-4-10.5(e)(1)(B) Dealing in a synthetic drug or lookalike substance. Amount exceeding 5 grams.

ECF 11-1 at 1. A Report of Investigation of Incident was also prepared and states:

> IC Code: 35-48-4-10.5(e)(1)(B) Dealing in a synthetic drug or lookalike substance. Amount exceeding 5 grams. On October 20, 2016 at approximately 10:05 am, I, Investigator P. Prulhiere was advised that green packages were observed thrown over the fence near the Health Services Unit from a car that was passing by. Having been notified of the circumstances involved in this incident, I used information that was already on file to narrow down a search parameter to find contraband that may have been introduced to the facility in this manner. I reviewed activity in housing Unit South G Unit and observed activity consistent with offenders in the process of hiding contraband. A search team was assembled and sent to G Unit where an Officer did retrieve two green packages from the G Unit latrine. During the process of investigation (summarized in confidential case number 16-IYC-0171) I observed the arrival of the packages to the facility, the movement of the packages to Housing Unit South G Unit and the attempted hiding of the items in G Unit latrine. I observed the command and control by the use of a cell phone and the attempts made by offenders to conceal this activity. As a result of this investigation, Offender Michael Wilson 990969 was found to have carried the packages from the Health Services Unit back to Housing Unit South. Once in G Unit, Offender Wilson handed control of the packages to another offender. The contents of the packages were inventoried and a complete inventory of the items is included in case number 16-IYC-0171. Amount the items present was a quantity of synthetic marijuana exceeding a weight of 5 grams. The presence of the synthetic drug is the reason this charge was filed for dealing in a synthetic drug.

ECF 11-1 at 2.

Wilson was notified of the charge on November 30, 2016, when he was served with the conduct report and screening report, ECF 11-1 at 1 and ECF 11-2 at 1. The screening officer noted that Wilson did not request any witnesses, but did request a copy of the internal affairs report of investigation. ECF 11-2 at 1. At the hearing, Wilson stated: "I'm not guilty. I have never been caught with no drugs at all." ECF 11-4 at 1. The hearing officer found Wilson guilty of violating offense A-100 based on staff reports, Wilson's statement, the report of investigation, and the evidence contained in the record. ECF 11-4 at 1, 11-9 at 2.

In his amended petition, Wilson argues there are four grounds which entitle him to habeas corpus relief. ECF 6 at 2-6. In his first ground, he asserts his due process rights were violated because he was denied the right to present evidence in his defense. *Id*. at 2-3. In this regard, he claims that he was denied crucial evidence—photographs, video footage, and all exculpatory evidence—both during his screening and at the hearing. *Id*. at 2. A prisoner has a right to call witnesses and present documentary evidence in a prison disciplinary proceeding. *Wolff*, 418 U.S. at 566. Wilson's right to present evidence was satisfied. During his screening, he had the right to request witnesses and evidence in his defense. However, as indicated on his screening report, Wilson did not request any witnesses or physical evidence—except for the internal affairs report of investigation for case number 16–IYC-0171. ECF 11-2 at 1. This is confirmed by the declarations filed in this case by both the screening officer, Haywood

Andrews, and the hearing officer, Robert Gagnon. ECF 11-8 at 1-2, 11-9 at 1-2. In Andrews's declaration, he testified that "Wilson did not request any photographs, videos, or evidence during the screening except the Report of Investigation." ECF 11-8 at 2. And Gagnon testified that "Wilson did not request any photographs, videos, or any other evidence during the disciplinary hearing." ECF 11-9 at 2. Furthermore, the court has thoroughly reviewed the record and finds no evidence to support Wilson's contention that he requested testimonial and documentary evidence during his screening or at the hearing, other than the report of investigation.

To the extent Wilson claims the hearing officer improperly denied his request to review the report of investigation, that contention fails. ECF 6 at 3-4. While Wilson had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, he did not necessarily have a right to personally review that evidence. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). Here, Wilson did not have a right to review the report of investigation because the release of the report would have given Wilson and other offenders crucial, sensitive information about the details of the synthetic drug dealing investigation as well as insight into the surveillance techniques used by prison investigators. Furthermore, the court has reviewed the report of investigation and finds it is reliable and was appropriately withheld from Wilson.

Nor does the report of investigation contain any exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). While Wilson has a right to present relevant exculpatory evidence in his defense, the report of investigation is made up of incriminating—not exculpatory—evidence. Furthermore, because Gagnon thoroughly reviewed and considered the report of investigation, there was no violation of Wilson's due process rights. *White*, 266 F.3d at 767. As stated, the court has reviewed the report of investigation and finds it does not contain any exculpatory evidence. *Jeffries v. Neal*, 737 Fed. Appx 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs."). Therefore, Wilson's first ground does not identify a basis for habeas corpus relief.

In his second ground, Wilson argues his due process rights were violated because he was given an "incomplete and inaccurate written fact finding statement devoid of any detailed reasons for [his] guilty finding." ECF 6 at 3. Due process requires that a fact-finder provide a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564-65. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*,

6

485 F.3d 934, 941 (7th Cir. 2007). In Gagnon's report of disciplinary hearing, he stated that he considered all of the evidence, staff reports, and Wilson's statement in reaching his conclusion that Wilson was guilty. ECF 11-4 at 1. And in his declaration, Gagnon explicitly testified that "Prior to the hearing, [he] reviewed the Internal Affairs Report of Investigation 16-IYC-0171." ECF 11-9 at 2. So while Gagnon's statement may not be lengthy, he adequately identified the evidence he relied on in his decision, and it is clear he chose to credit the evidence collected and the conclusions reached by the internal affairs investigator. Because Gagnon's written statement satisfied the minimal requirements of due process, and he thoroughly considered all of the record evidence, this ground does not provide a basis for habeas corpus relief.

In his third ground, Wilson claims his due process rights were violated because he was denied an impartial hearing. ECF 6 at 3. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id*.

The court's review of the record shows there is no evidence to support Wilson's claim that Gagnon subjected him to a partial hearing or was biased against him. While

7

he asserts his hearing was unfair because Gagnon did not consider the report of investigation, he is incorrect on that point. As discussed above, Gagnon explicitly testified he reviewed the report of investigation prior to the hearing. ECF 11-9 at 2. Wilson has also not shown that Gagnon was directly or otherwise substantially involved in the factual events underlying the disciplinary charges, or the investigation of the incident. *Piggie*, 342 F.3d at 666. Because Wilson has failed to establish that Gagnon's conduct in adjudicating his case was in some way biased, his third ground does not identify a basis for habeas corpus relief.

In his fourth ground, Wilson argues his due process rights were violated because Gagnon did not have sufficient evidence to find him guilty of violating offense A-100. ECF 6 at 5-6. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In this case, Investigator Prulhiere's conduct report stems from his internal affairs report of investigation in which he documents Wilson's participation in a drug dealing scheme to deliver and distribute synthetic marijuana into the prison facility. ECF 11-1 at 1. The scheme entailed the delivery of two green packages containing synthetic marijuana, which were first thrown over the security fence near the Health Services Unit at the prison, by the driver of a car as it passed by the prison. *Id*. at 2. An offender then walked to the fence, retrieved the packages, moved them to the Housing Unit South G Unit, and hid them in the G Unit latrine. *Id*. The specific movement of the packages was controlled by an offender using a cell phone and multiple offenders

attempting to conceal the activity. *Id*. Prulhiere's investigation showed that Wilson carried the packages from the Health Services Unit back to the Housing Unit South G Unit. *Id*. Once in the G Unit, Wilson handed control of the packages to another offender. *Id*. Given Wilson's participation in the scheme, Prulhiere charged him with violating a state law—IC 35-48-4-10.5(e)(1)(B)—because he was dealing in a synthetic drug in an amount exceeding five grams. *Id*.

In sum, given Prulhiere's conduct report, his report of investigation in which he memorialized Wilson's participation in the drug dealing scheme with other offenders, and his observation of Wilson in the Housing Unit South G Unit where he and other offenders strategically moved about and hid the green packages of contraband from prison officials, there was more than "some evidence" for Gagnon to conclude that Wilson violated a state law in contravention of offense A-100. While Wilson denied any involvement in the incident claiming he "never possessed nor touched any of the alleged packages of synthetic marijuana," (ECF 6 at 5), Gagnon was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). Therefore, Gagnon's finding that Wilson was guilty was neither arbitrary nor unreasonable in light of these facts.

If Wilson wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma

pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

ACCORDINGLY:

Michael Wilson's petition for writ of habeas corpus is DENIED.

The Clerk is DIRECTED to: (1) edit the docket, changing the respondent to Warden pursuant to Indiana Code 11-8-2-7 and (2) CLOSE the case.

SO ORDERED on February 1, 2019.

                                                 /s/ Philip P. Simon
                                                JUDGE
                                                UNITED STATES DISTRICT COURT